Stephanie M. Parent (OSB 925908)
(*Pro Hac Vice*)
Center for Biological Diversity
PO Box 11374
Portland, OR 97211
Email: SParent@biologicaldiversity.org
Tel: (503) 320-3235

Attorney for Plaintiff
Center for Biological Diversity

THE UNITED STATES DISTRICT COURT
OF ARIZONA

Center for Biological Diversity,

*Plaintiff,*

v.

United States Fish and Wildlife Service and Deb Haaland, in her official capacity as Secretary of the United States Department of the Interior,

*Defendants.*

Case No. _____

COMPLAINT FOR DECLARATORY AND MANDATORY RELIEF

1. For over *four years*, the U.S. Fish and Wildlife Service ("FWS") has disregarded its duty to respond to the Petition for Rulemaking to Protect Endangered Species from Pesticides by Restricting Pesticide Use in Critical Habitat (submitted January 7, 2019) ("Petition").[1] Congress requires agencies to conclude matters presented to them within a reasonable time under the Administrative Procedure Act ("APA"). 5 U.S.C. § 555(b). Plaintiff, Center for Biological Diversity ("Center"), challenges FWS's unreasonable delay to respond to the Petition.

2. This persistent delay in failing to respond to the Petition allows toxic

---

[1] Available at: https://www.biologicaldiversity.org/campaigns/pesticides_reduction/pdfs/Petition-to-FWS-and-NMFS-To%20Prohibit-Use-of-Pesticides-in-Critical-Habitat.pdf

pesticides to continue to contaminate species' critical habitats designated pursuant to the Endangered Species Act ("ESA"). 16 U.S.C. § 1533(a)(3). As set forth in more detail below, current Environmental Protection Agency ("EPA") assessments of just twelve pesticide active ingredients determined that the majority of designated critical habitats may be affected by their use.

3. Harm to species and their critical habitats that should be protected under the ESA will continue until FWS's unreasonable delay is remedied.

4. This lawsuit seeks an order compelling FWS to respond to the Petition by a date certain, no later ninety (90) days following this Court's order, and other relief.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. §§ 2201-02 (declaratory relief), and 5 U.S.C. § 702 (right of review) ("APA").

6. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(c) because the Center resides in this district.

7. Arizona is among the states where pesticides may be used in designated critical habitats. Numerous members of the Center reside in or visit Arizona, and, thus, are exposed to uses of chlorpyrifos or diazinon, and their professional and personal interests in endangered and threatened plants, insects, birds, and other wildlife are injured by FWS's unreasonable delay, as alleged more fully below.

**PARTIES**

8. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a non-profit corporation with its headquarters in Tucson, Arizona, an office in Flagstaff, Arizona, offices throughout the United States, and an office in Mexico. The Center was founded in 1989 to fight the growing number of threats to biodiversity. The Center's mission is to secure a future for all species, great and small, hovering on the brink of extinction through science, policy, education, and environmental law. The Center has a full-time staff of

scientists, lawyers, and other professionals who work exclusively on campaigns to save species and their habitats. The Center is actively involved in species and habitat protection issues throughout the United States, including the U.S. territories, as well as outside of the United States and works to secure protections for all species. One of the Center's flagship programs is its environmental health program, which focuses on the adverse impacts of pesticides, including chlorpyrifos and diazinon. The Center has more than 89,000 members that live throughout the United States, including Arizona. The Center's members rely on the Center to represent their interests in protecting biodiversity and conserving threatened and endangered species and their habitats.

9. Center members regularly work in, reside in, visit, observe, recreate, and otherwise enjoy areas across the nation that are impacted by use of pesticides on or near critical habitats and intend to continue doing so in the future. Plaintiffs' members regularly derive professional, aesthetic, spiritual, recreational, economic, conservation, educational, and other benefits from the endangered and threatened species that live in these areas, rely on critical habitat for recovery, would be impacted by continued pesticides use in critical habitat and intend to continue doing so in the future. The interests of Plaintiffs' members in the species and their critical habitats impacted by pesticides are and will be directly, adversely, and irreparably affected by FWS's violation of the law.

10. For example, Center member Brett Hartl lives in Arizona and is an avid birder and photographer of wildlife. His concrete interests are harmed by effects of pesticides in critical habitat for the Chiricahua leopard frog in Arizona, the Fresno kangaroo rat in California, and the yellow-shouldered blackbird in Puerto Rico. Specifically, he regularly enjoys hiking and recreating throughout Arizona and observing the frog in its natural environment. His interests are therefore harmed by the use of pesticides in the frog's critical habitat in Arizona. EPA determined that the frog's critical habitat may harmed by twelve of the twelve pesticides for which EPA has prepared nationwide biological evaluations so far. He also travels widely to observe and photograph

birds and other wildlife. He regularly visits California to observe the Fresno kangaroo rate and Puerto Rico to observe the yellow-shouldered blackbird. His concrete interests in these species are harmed by the effects of pesticides on these species' critical habitats and others as well. EPA determined that the kangaroo rat's critical habitat may be harmed by twelve of the twelve pesticides for which EPA has prepared nationwide biological evaluations so far and the blackbird may be harmed by nine of twelve.

11. Additionally, Center member Elise Bennett lives in Florida and regularly visits the Florida panhandle to observe and enjoy frosted flatwoods salamanders and check on the condition of their habitat. She plans to return this year to try to see frosted flatwoods salamanders again. On this trip, she also plans to travel farther west into the panhandle to attempt to see reticulated flatwoods salamanders in their habitat. She is fascinated by these salamanders' life cycles and loves exploring the pine forests where they live, with the hope of catching a glimpse of one in the wild someday. EPA determined that each of these salamanders may be harmed by twelve of the twelve pesticides for which EPA has prepared nationwide biological evaluations so far. Accordingly, Ms. Bennett's concrete interests are impaired by the use of pesticides in these species' critical habitats.

12. The above-described interests of the Center's members have been and are being adversely affected by FWS's failure to respond to the Petition and consider the impacts of continued use of pesticides on critical habitat. If FWS responded to the Petition as required, FWS would consider how the pesticides are affecting endangered and threatened species in their critical habitats and, if necessary, would implement the appropriate regulations to protect the species' critical habitats.

13. Unless the requested relief is granted, the Center's members' interests will continue to be adversely affected and injured by FWS's failure to respond to the Petition, as well as by the ongoing harm to ESA-protected species in their critical habitats. The injuries described above are actual, concrete injuries that are presently suffered by the Center and its members and will continue to occur unless relief is granted by this Court.

These injuries are directly caused by FWS's failure to respond to the Petition. The relief sought herein—an order compelling a response to the Petition by a date certain—would redress the Center and its members' injuries. The Center has no other adequate remedy at law.

14. In addition, FWS's unreasonable delay in responding to the Petition adversely injures the Center's organizational interests. The Center's mission is dedicated to protecting ESA-protected species and their critical habitats from adverse impacts of pesticides, among other threats. FWS's unreasonable delay has caused the Center to continue to divert resources from addressing other pesticide work to focus on the harms caused by multiple pesticides in critical habitat.

15. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is an agency of the United States Government within the Department of the Interior. Under the ESA, FWS is the federal agency delegated responsibility from the Secretary of the Interior for engaging in rulemaking to implement and enforce the provisions of the ESA. 16 U.S.C. § 1540(f).

16. Defendant, DEB HAALAND, is the Secretary of the United States Department of the Interior and, among other duties, is charged by Congress to implement the ESA and comply with the provisions of the APA. Secretary Haaland oversees FWS and is ultimately responsible for FWS's completion of ESA and APA duties. In this action, the Center is suing Secretary Haaland in her official capacity as Secretary of the Interior.

## LEGAL BACKGROUND

**I.     The Administrative Procedure Act**

17. The APA requires that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). The APA further requires that all federal agencies address matters "within a reasonable time," and "[w]ith due regard for the convenience and necessity of the parties or their representatives." *Id.* § § 555(b). Reviewing courts "shall compel agency action unlawfully

withheld or unreasonably delayed." *Id.* § 706(1).

**II.  The Endangered Species Act**

18.  Congress enacted the ESA, in part, to provide a "means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . [and] a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b).

19.  The Secretaries of Commerce and the Interior are charged with administering and enforcing the ESA. They have delegated this responsibility to FWS and the National Marine Fisheries Service (NMFS) (collectively "Services"). 50 C.F.R. § 402.01(b).

20.  Section 4(a) of the ESA requires that the Services designate critical habitat for species that have been listed as threatened or endangered. 16 U.S.C. 1533(a)(3). Critical habitat is defined as areas within the geographical area occupied by the species at the time of listing that contains physical or biological features that (1) are essential to the conservation of the species and (2) may require special management considerations or protections or areas outside the geographical scope that have been determined by the Secretary to be essential to the conservation of the species. 16 U.S.C. § 1532(5)(a).

21.  When Congress passed the ESA, it recognized that habitat was one of the driving causes of species loss. H.R. Rep. No. 93-412, at 4 (1973). During the passage of the ESA 1978 amendments, Congress reaffirmed its stance on critical habitat stating, "the ultimate effectiveness of the Endangered Species Act will depend on the designation of critical habitat." H.R. Rep. No. 94-887, at 3 (1976).

22.  Critical habitat plays a crucial role in ESA protections by allowing species to recover so that they no longer need ESA protections. 50 C.F.R. § 402.02; 16 U.S.C. § 1532(5) ("critical habitat" contains the "physical or biological features' essential to conservation of the species and which may require special management or protection); *Id.* § 1532(3) ("conservation" means using all methods to bring species to the point that they no longer need protection under the ESA); 50 C.F.R. § 402.02 (defining adverse

modification as "a direct or indirect alteration that appreciably diminishes the value of critical habitat as a whole for the conservation of the species). Critical habitat protects areas for the conservation and survival of species and represents an integral part of the ESA's scheme to protect imperiled species.

23. Section 7(a)(1) of the ESA mandates that FWS shall review the programs it administers and use these programs to further the purposes of the ESA. 16 U.S.C. § 1536(a)(1).

24. Section 7(a)(2) of the ESA mandates that agencies "insure" authorizations of pesticides are not likely to jeopardize any ESA-protected species or destroy or adversely modify any critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.02. To satisfy its substantive duties, EPA has a procedural duty to evaluate pesticides' effects on ESA-protected species and critical habitats "in consultation with and with the assistance of" the Services any time EPA determines its actions "may affect" ESA-protected species or critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14(a), 402.01(b).

## FACTUAL BACKGROUND

25. On January 7, 2019, the Center submitted to FWS a Petition for Rulemaking to Restrict Pesticide Use in Critical Habitat. As of the filing of this Complaint, FWS has failed to respond to the [Petition](#) for over four years.

26. The Petition requested that FWS promulgate rulemaking to prohibit the use of pesticides in all critical habitats unless the EPA and FWS have completed the ESA Section 7(a)(2) consultation requirements for a specific pesticide. Completion of consultation occurs when FWS issues a final biological opinion to EPA, and EPA implements it, or a private party has completed an ESA Section 10 Habitat Conservation Plan.

27. EPA has initiated Section 7(a)(2) consultation with FWS by completing the first twelve nationwide Biological Evaluations determining the effects on endangered and threatened species and critical habitats from use of products that contain the following

pesticide active ingredients: chlorpyrifos (2018), diazinon (2018), malathion (2018), carbaryl (2021), methomyl (2021), glyphosate (2021), atrazine (2021), simazine (2021), imidacloprid (2022), thiamethoxam (2022), clothianidin (2022), and sulfoxaflor (2023). FWS has issued a final Biological Opinion for malathion. The other eleven nationwide pesticide consultations are ongoing.

28. These nationwide Biological Evaluations demonstrate that just twelve pesticide active ingredients harm the majority of the approximately 800 designated critical habitats. For example, collectively, in these twelve pesticide Biological Evaluations, EPA determined eight or more of the twelve pesticides "may affect" approximately 668 designated critical habitats:

- All 12 of the assessed pesticides may affect 205 critical habitats;
- 11 of the 12 assessed pesticides may affect 84 critical habitats;
- 10 of the 12 assessed pesticides may affect 125 critical habitats;
- 9 of the 12 assessed pesticides may affect 101 critical habitats;
- 8 of the 12 assessed pesticides may affect 153 critical habitats.

In addition to these 668 impacted critical habitats, EPA determined that additional designated critical habitats may be affected by seven or fewer of the twelve pesticides.

29. These twelve nationwide pesticide Biological Evaluations tell only part of the story. EPA has not yet determined whether hundreds of other pesticide active ingredients may affect critical habitats.

30. On March 27, 2023, in an effort to avoid litigation, the Center submitted to FWS a Notice of Intent to Sue. [2] In the Notice letter, the Center identified approximately forty-two highly imperiled, narrowly endemic species that would receive the greatest benefit from prohibiting the use of pesticides within their critical habitats.

---

[2] Available at: https://www.biologicaldiversity.org/campaigns/pesticides_reduction/pdfs/Center-FWS-CH-Pesticides-Petition-NOI-2023-3-27.pdf

31. Of these forty-two species referenced in the Notice letter, EPA determined in its twelve nationwide Biological Evaluations, referenced in paragraph 27, that thirty of these species' critical habitats may be affected by all twelve of the pesticides, six of these species' critical habitats may be affected by eleven of the pesticides, one of these species' critical habitat may be affected by ten of the pesticides, one of these species' critical habitat may be affected by nine of the pesticides, and four of these species' critical habitats may be affected by eight of the pesticides. FWS has not responded to the Notice letter.

32. For the above reasons, FWS has unreasonably and unlawfully withheld its response to the 2019 Petition.

**CLAIM FOR RELIEF**

**FWS IS UNREASONABLY DELAYED RESPONSE TO THE PEITITON IN VIOLATION OF THE APA**

33. All allegations set forth above in this Complaint are incorporated herein by reference.

34. The APA provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule," and dictates that agencies must respond to such petitions "within a reasonable time." 5 U.S.C. §§ 553(e), 555(b). Accordingly, APA section 706(1) authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

35. In January 2019, the Center filed the Petition for Rulemaking to Protect Endangered Species from Pesticide Use by Restricting Pesticide Use in Critical Habitat which requested that FWS in rulemaking to prohibit pesticide use in critical habitat.

36. FWS has failed to respond to the Petition for over four years.

37. In March 2023, the Center sent a Notice of Intent to Sue for Unreasonable Delay to FWS notifying it that the Center intends to sue if FWS continued to ignore the Petition. FWS has not responded to the Notice letter.

38. FWS's failure to respond to the Center's Petition constitutes unreasonable

delay of agency action, in violation of the APA. 5 U.S.C. §§ 553(e); 555(b); 5 U.S.C. § 706(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment for the following relief:

1. Declare that Defendants FWS and Secretary Deb Haaland are in violation of Section 555(b) of the APA by failing to respond to the Petition within a reasonable time;

2. Issue an order compelling Defendants FWS and Secretary Deb Haaland to respond no later ninety (90) days following this Court's order, in accordance with Section 706(1) of the APA;

4. Award Plaintiff its attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

5. Grant Plaintiff such additional and further relief as the Court may deem just and appropriate.

Respectfully submitted this 4th day of May, 2023.

/s/ Stephanie M. Parent
STEPHANIE M. PARENT (OSB 925908)
(*Pro Hac Vice*)
Center for Biological Diversity
PO Box 11374
Portland, OR 97211
Email: SParent@biologicaldiversity.org
Tel: (503)320-3235

*Attorney for Plaintiff*
*Center for Biological Diversity*